- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NAJEE PLAYER, MEMORANDUM
             AND ORDER
    Petitioner, 06 CV 2764 (JG)

  v.

DALE A. ARTUS,

    Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

A P P E A R A N C E S:

  NAJEE PLAYER
    Reg. # 01A4523
    Clinton Correctional Facility
    P.O. Box 2000
    Dannemora, New York 12929
    Petitioner *Pro Se*

  THOMAS J. SPOTA
    Suffolk County District Attorney
    Criminal Courts Building
    200 Center Drive
    Riverhead, New York 11901
  By: GUY ARCIDIACONO
    Assistant District Attorney
    Attorneys for Respondent

JOHN GLEESON, United States District Judge:

  Najee Player petitions for a writ of habeas corpus, challenging his 2001 conviction in state court in Suffolk County, following a jury trial, of murder in the second degree, kidnapping in the first degree, kidnapping in the second degree, and conspiracy in the fourth degree. For the reasons set forth below, the petition is denied.

BACKGROUND

A.  The Offense Conduct

Player and three codefendants were prosecuted for the 1999 killing of Donnie Meyer. The relevant events began with codefendant James Argentina's incarceration in early 1999 for a parole violation. Argentina believed that Meyer gave police the information that led to Argentina's arrest and incarceration for the violation. On December 8, 1999, the day after his release, Argentina contacted several friends and arranged to meet with Meyer, explaining to Meyer that he wanted to discuss a possible drug sale. A group of five men -- including both Meyer and Argentina as well as Arthur Morace, Anthony Torres, and Darrin McKiernan -- met that afternoon in a shopping center parking lot in West Islip. The group drove in one car to the apartment of codefendant Kenneth Cardona, located at 112 Willow Street.

When the men arrived at 112 Willow Street, Cardona was at the apartment, as was Najee Player, codefendant Dowan Myers, and Cardona's roommate, George Rajotte. When Meyer entered the apartment, the four codefendants began to interrogate him. Cardona dealt the first blow to Meyer's face, and soon the other three codefendants joined in punching Meyer. Cardona soon left the room and returned with an aluminum baseball bat, which he gave to Player. Player and Cardona took turns hitting Meyer with the bat while Argentina and Myers held his legs. Player retrieved a role of tape and taped Meyer's eyes and mouth. He struck Meyer's hands with a hammer repeatedly in an effort to break his "Legion of Doom" finger -- named after what the group called itself -- since Cardona declared that Meyer was no longer a member. Player began to burn some of Meyer's hair with a lighter. During most of the attack, Rajotte was in another room, and Morace stepped away from the commotion.

After removing the tape from an unconscious Meyer's mouth, and after a failed effort to elicit answers from him, Cardona determined that Player, Myers, and Rajotte would take Meyer to a location called Blue Point, where they knew Gus Atterole, a man who owned a vacant apartment there. Cardona hoped the Atterole would allow Meyer to recuperate in the apartment. Atterole refused the request, and the three to returned with Meyer to 112 Willow Street. They brought Meyer into the back room of the apartment. Cardona was at the apartment and Argentina would soon arrive, but Morace, Torres, and McKiernan had gone elsewhere and did not return that evening. Cardona stated that Meyer was not leaving the apartment alive. Rajotte then left the apartment, though he soon returned when Cardona and Player requested that he come back to help the group clean up.

When Rajotte returned to 112 Willow Street, Cardona and Argentina were standing in the driveway while Player was in the back room of the apartment with Meyer, repeatedly hitting Meyer with the swivel base of an office chair. Player eventually emerged from the room and announced that Meyer was dead.

Cardona determined that Player, Myers, and Maurice Brown, who had arrived on the scene at approximately 10:30 p.m., would dig a hole and bury Meyer in the woods in Central Islip. While Player and Myers dug the hole, Brown returned to 112 Willow Street. Soon after, he drove with Rajotte to the burial site, having placed Meyer's body in the trunk of the car. Player, Myers, and Brown then buried Meyer.

Investigators found Meyer's body on January 24, 2000.

B. The Procedural History

1. *The Trial Court Proceedings*

In 2001, a jury found Player guilty of murder in the second degree, kidnapping in the first and second degrees, and conspiracy in the fourth degree. He was sentenced as a prior felony offender to 25 years to life imprisonment for murder and also for kidnapping in the first degree, 25 years for the kidnapping in the second degree charge, and 2-4 years for the conspiracy charge, all four to run concurrently.

At trial, the state's witnesses included Brown, Rajotte and Morace. In New York, "a defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y.Crim. Proc. Law, § 60.22(1) (McKinney 2003). The court determined that Brown was not an accomplice as a matter of law, so the jury would not hear an accomplice charge pursuant to § 60.22 with respect to Brown. The court further ruled that the jury should determine whether or not, on the facts of the case, Rajotte and Morace were accomplices to the kidnapping and murder of Meyer. Defense counsel representing Cardona took exception to the court's decision with respect to Brown, but failed to take exception to the charge related to Rajotte and Morace. At no point did Player's own attorney take exception to the court's charging decision with respect to Brown, Rajotte or Morace.

Player did object at trial to the court's refusal to instruct the jury that unlawful imprisonment is a lesser-included offense of the kidnapping charges. Player also objected at several points during the prosecutor's summation in response to what he claimed were improper

4

comments that unfairly prejudiced the jury against him.[1]

    2.    *The Direct Appeal*

On appeal to the New York Supreme Court, Appellate Division, Player asserted trial error resulting from the fact that (1) the court failed to instruct the jury, pursuant to N.Y. Crim. Proc. Law § 60.22, that a defendant cannot be convicted upon the uncorroborated testimony of an accomplice witness, and that the testimony of Brown, Rajotte, and Morace was accomplice testimony as a matter of law; (2) the trial court erred when it denied defense counsel's motion to dismiss the kidnapping, conspiracy, and felony-murder counts of the indictment; (3) the court erred when it failed to instruct the jury on the lesser-included offense of unlawful imprisonment; (4) the cumulative effect of prosecutorial misconduct prejudiced Player; (5) the sentence imposed was excessive; (6) the prosecutor constructively amended the indictment, causing a substantive change in the theory of the case in a way that deprived Player of a fair trial; (7) the prosecutor failed to offer proof to fulfill the representations he made in his opening statement, which prejudiced Player; (8) Player was deprived of his right to an impartial jury due to the equivocation of one juror when asked whether or not he could be fair; (9) cumulative trial errors deprived Player of a fair trial; and (10) Player was deprived of effective assistance of counsel.

On April 25, 2005, the Appellate Division affirmed the conviction, addressing claims in Player's initial appeals brief as well as those included in a supplemental brief. *People*

---

[1] During oral argument, Player requested that I direct the Assistant District Attorney to provide him with a written copy of the complete trial transcript, which is voluminous. Though an indigent criminal defendant in state court has a constitutional right to a trial transcript on direct appeal, see there is no constitutional right to a transcript on federal habeas review. Player has not asserted that he was unconstitutionally denied access to the trial transcript on direct appeal. Accordingly, given the size of the transcript and the expense involved in providing Player with a copy of it, I decline his request.

*v. Player*, 793 N.Y.S.2d 536 (2d Dep't 2005). The court held that Player's claim based upon the corroboration requirements of § 60.22 was unpreserved for review, but "in any event" without merit. The Appellate Division found that the trial court had properly determined that Brown was merely an accessory after the fact, and not an accomplice as a matter of law. The court also found that the trial court's submission of the question of whether Rajotte and Morace were accomplice witnesses as a question of fact for the jury was appropriate, "since different inferences regarding their complicity could reasonably be drawn from the evidence at trial." *Player*, 793 N.Y.S.2d at 536-8. Player's claim that the trial court should have instructed the jury on unlawful imprisonment as a lesser-included offense of kidnapping was also rejected, since "[u]nlawful imprisonment in the first degree is not a lesser-included offense of kidnapping in the first degree or kidnapping in the second degree." *Id*. (citing *People v. Ahedo*, 646 N.Y.S.2d 520 (1996)). Furthermore, the Appellate Division determined that the sentence imposed by the trial court was not excessive. *Id.* With respect to Player's remaining arguments on appeal, the court found them to be "either unpreserved for appellate review or without merit." *Id*.

Player moved the Appellate Division to reargue his claims, and the court subsequently denied the request. Player's application for leave to appeal to the New York Court of Appeals was also denied. *People v. Player*, 5 N.Y.3d 793 (2005) (Ciparick, J.). Player did not file a state collateral attack upon his conviction.

3.  *The Instant Petition*

Player claims that he was deprived of a fair trial because (1) the trial court violated N.Y. Crim. Proc. Law § 60.22 by failing to instruct the jury that defendants may not be convicted solely on the uncorroborated testimony of accomplice witnesses; (2) the trial court

6

should have instructed the jury that unlawful imprisonment in the first degree is a lesser-included offense of kidnapping in the second degree; (3) the state substantively changed its theory of the case at trial, causing a constructive amendment of the indictment; (4) the trial court's preliminary instructions to the jury violated N.Y. Crim. Proc. Law § 270.40, because the court's recitation to the jury of each count of the indictment during the initial instruction allowed the jury to determine that Player was guilty of the charges before Player was able to present his evidence at trial; and (5) the prosecutor's summation to the jury deprived him of a fair trial.

## DISCUSSION

A. <u>Habeas Corpus Relief</u>

    1.     *AEDPA Deference to State Court Factfinding and Decisions*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only where the state court's adjudication of the federal claim on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Habeas relief is also warranted if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," or where the petitioner presents clear and convincing evidence to rebut the presumption that state court findings of fact are correct. *See* 28 U.S.C. § 2254(d)(2); § 2254(e)(1).

A state court decision is an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Furthermore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411); *see also Yarborough v. Gentry*, 124 S. Ct. 1, 4 (2003) (per curiam) ("Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.").

    2.    *Procedural Default*

Where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *See Harris*, 489 U.S. at 261; *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d. Cir.1995). *See also Coleman v. Thompson*, 501 U.S. 722, 744, 750 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

In the event that a state appellate court rejects a claim as procedurally defaulted, the claim may only be considered on federal habeas review upon a showing of cause and

8

prejudice, or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *See Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "'that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable.'" *Coleman*, 501 U.S. at 753 (ellipses in original) (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

If the petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This fundamental miscarriage of justice exception to the procedural default rule is "extremely rare," and should be applied only in "extraordinary circumstances." *See Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (citing *Schlup*, 513 U.S. at 321-22).

B. <u>Player's Claims</u>

1. *The Corroboration Requirement*

Player asserts that he is entitled to habeas relief on due process grounds because the trial judge failed to conclude that Brown, Rajotte, and Morace were accomplice witnesses, and failed to instruct the jury that a defendant may not be convicted based solely upon the

9

uncorroborated testimony of an accomplice witness, pursuant to N.Y. Crim. Proc. Law § 60.22. Because Player failed to object on these grounds at trial, the Appellate Division found this claim unpreserved for appellate review, and "in any event" the court rejected the claim on the merits, *see Player*, 793 N.Y.S.2d at 536-38.

As an initial matter, I note that Player's § 60.22 claim sounds in state law exclusively, and does not present a federal due process claim. In spite of Player's citation to the Due Process Clause in his brief to the Appellate Division, there is no federal analog to the protection afforded by § 60.22 of New York's Criminal Procedure Law. To the contrary, under federal law a defendant may be convicted based on the uncorroborated testimony of an accomplice witness without violating the Due Process clause, "so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993); *see also United States v. Parker*, 903 F.2d 91, 97 (2d Cir. 1990); *Smithwick v. Walker*, 758 F.Supp.178, 186 (S.D.N.Y. 1991) ( "[T]he requirement of accomplice corroboration is solely a matter of New York State law.")

Even if this claim were cognizable on federal habeas review, it would be procedurally barred since the Appellate Division found it to be unpreserved for appellate review. The state court's reliance upon a procedural bar as an independent and adequate basis for its disposition of the case prohibits me from reviewing the claim on the merits unless an exception to the procedural default rule applies. Player has not shown cause for his attorney's failure to take exception to the court's charging decision with respect to Brown, Rajotte, and Morace. Nor has Player demonstrated that he was prejudiced by the trial court's decision; it is apparent from the trial record that there was more than sufficient corroboration for the testimony of Brown,

Rajotte and Morace to meet the requirements of the state statute. Finally, I do not find that this is one of the extraordinary cases in which a miscarriage of justice would result from my failure to entertain the claim. Therefore, before examining the merits of Player's corroboration requirement claim, I must reject it due to procedural default.

Finally, Player's claim has no merit. Brown arrived at the apartment only after the kidnapping and murder of Meyer was already complete, and neither Rajotte nor Morace actively participated in the kidnapping and killing to the degree the four codefendants participated. The state court's finding that Brown was not an accomplice for the purposes of § 60.22, and that "different inferences regarding the complicity" of Rajotte and Morace could reasonably have been drawn, were not unreasonable in light of the evidence presented.

Accordingly, I reject Player's claim that the state court violated his due process rights when it failed to instruct the jury regarding the corroboration requirement of N.Y. Crim. Proc. Law § 60.22.

2. *The Lesser-Included Offense Claim*

Player argues that he was denied a fair trial because the trial court refused to instruct the jury that unlawful imprisonment is a lesser-included offense of kidnapping. As noted above, the Appellate Division rejected the same claim on direct appeal, stating that unlawful imprisonment in the first degree is not actually a lesser-included offense of kidnapping in the first or second degree.

Like Player's corroboration requirement claim, this claim is not cognizable on federal habeas review. The United States Supreme Court has held that due process requires a trial court to submit jury instructions regarding lesser-included offenses in capital cases, *see Beck*

*v. Alabama*, 447 U.S. 625, 637-38 (1980), but has expressly declined to apply that rule in the non-capital context. *Id*. at 638 n.14. The Second Circuit has confirmed that outside the capital context, the issue of jury instructions regarding lesser-included offenses does not pose a constitutional question in most cases. *See Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996). The *Hoffman* court reasoned that where there is no applicable constitutional rule on a particular issue of criminal procedure, a court is precluded from considering the issue on habeas review, pursuant to the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989) (ruling that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced"). The court further concluded, "Since a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule, we hold that *Teague* precludes our consideration of the issue." *Hoffman*, 86 F.3d at 48.

Accordingly, I reject Player's claim that his due process rights were violated when the trial court refused to instruct the jury that unlawful imprisonment is a lesser-included offense of kidnapping.

3.  *The Constructive Amendment Claim*

Player asserts that the prosecutor's theory of the of the case at trial contradicted the indictment, amounting to a constructive amendment of the indictment in violation of his right to a fair trial. Specifically, Player notes that the indictment alleged a conspiracy that continued until the disposal of Meyer's body in an effort to conceal the crime, while the prosecutor argued at trial that the conspiracy ended with Meyer's death.

Because the Appellate Division rejected this claim as either unpreserved or

12

without merit, I am not procedurally barred from reviewing it here. *See Jimenez v. Walker*, 458 F.3d 130, 139 (2d Cir. 2006) ("[W]e explicitly hold that when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved or without merit,' the validity of the claim is preserved and is subject to federal review."); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2d Cir. 2000) (where a state court rejects a claim because it is "either unpreserved for appellate review or without merit," the state court has not actually relied upon a procedural default in order to deny the claim).

In federal criminal cases, when an indictment is amended outside the grand jury process it constitutes a *per se* violation of the Fifth Amendment right to be indicted by a grand jury, *see United States v. Ford*, 435 F.3d 204, 215-16 (2d Cir. 2006), which "require[s] reversal even without a showing of prejudice to the defendant." *United States v. Clemente*, 22 F.3d 477, 482 (2d Cir. 1994). However, the Fifth Amendment's right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment, so does not work to limit state prosecutions. *See Lanfranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (citing *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972)). Therefore, like Player's first two claims in this case, his constructive amendment claim does not present a federal constitutional question.

Even if Player's constructive amendment claim were cognizable on federal habeas review, I would reject the claim. In the federal system, a constructive amendment arises when the government's proof and the trial court's jury instructions "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996). Where a conspiracy charge is at issue, the

13

prosecution need not have "set out with precision" every act furthering the conspiracy, so long as the acts proven reflect the essence of the overall scheme." *See United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975).

In contrast to a constructive amendment that broadens the indictment, "where an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment." *United States v. Miller*, 471 U.S. 130, 145 (1985); *see also United States v. Olmeda*, 461 F.3d 271, 287 (2d Cir. 2006) (though a constructive amendment broadening an indictment is a serious error, "a constructive amendment narrowing the scope of an indictment is not troublesome because it does not similarly increase a defendant's criminal exposure"); *United States v. Smith*, 918 F.2d 1032, 1036 (2d Cir. 1990) (narrowing the indictment at trial "does not offend the notice and review functions served by a grand jury's issuance of an indictment").

The New York Constitution also contains a grand jury indictment clause that provides that "[n]o person shall be held to answer for a capital or otherwise infamous crime . . . unless on indictment of a grand jury," and that an accused "shall be informed of the nature and cause of the accusation." N.Y. Const., art. I, § 6. The state legislature has specified that every indictment must contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, (a) asserts facts supporting every element of the offense charged and the defendant's or defendants' commission thereof with sufficient precision to clearly apprise the defendant or defendants of the conduct which is the subject of the accusation." N.Y. Crim. Proc. Law § 200.50 (7)(a). When the presentation of proof at trial contradicts the

14

factual allegations of the indictment, then the prosecutor has "violated the constitutional and statutory requirements that an indictment provide fair notice in order to permit the preparation of a defense." *People v. Grega*, 72 N.Y.2d 489, 497-98 (1988) ("Having specified in the indictment, and later in their answer to discovery, that defendant struck the victim, thereby causing her death, the People were not then free to present proof at trial that virtually ruled out that theory as the cause of death and substituted another one."). Like the Fifth Amendment, therefore, New York's rule against constructive amendments seeks to afford the accused fair notice of the charges so that he or she may prepare an adequate defense. *See Lanfranco*, 313 F.3d at 119.

The indictment charged Player with Conspiracy in the Fourth Degree and alleged 23 overt acts. Eight of those alleged acts took place after Meyer's death and involved efforts to intimidate witnesses or conceal the crime by disposing of Meyer's body. During the trial, but outside the presence of the jury, the prosecutor stated, "It is our position, that the conspiracy is ongoing until the ultimate murder of Donald Meyer." Tr. 4860. However, the prosecution put on evidence at trial that (1) Cardona and Player threatened Rajotte that if he did not help dispose of the body, and if he did not remain silent about the murder, they would kill him (Tr. 2903); (2) Player, Myers, Brown and Rajotte participated in the transport and burial of Meyer's body (Tr. 2903-06; 3590-98); and (3) Rajotte was ordered to clean and demolish the areas of the Willow Street apartment that had evidence of the murder (Tr. 2906-07).

Notwithstanding the prosecutor's statement, made when the jury was not present, the theory of the prosecution at trial was entirely consistent in substance with the indictment. Therefore, Player has failed to show constructive amendment by either federal or New York

15

standards. Even if the prosecutor had offered proof of a conspiracy that did not extend beyond the death of Meyer (by offering proof of Player's agreement to participate in the kidnapping and murder of Meyer), such a change in the state's case would have been a permissible narrowing of the indictment. Had the proof at trial indicated such a narrowing of the conspiracy charge, the acts proven would still have reflected the "essence" of the overall scheme, and no impermissible constructive amendment would have taken place.

Accordingly, even if Player's constructive amendment claim raised a federal constitutional issue, the state court's rejection of the claim was not an unreasonable application of clearly established federal law.

4. *The Preliminary Instruction Claim*

According to Player, the trial court's preliminary instructions to the jury included an outline of the elements of the charged crimes, which allowed jurors to employ the listed elements as a checklist with which to measure the evidence as it was revealed and determine Player's guilt prior to the presentation of the defense case. Player asserts that this deprived him of a fair trial.

Like Player's constructive amendment claim, the state court rejected this claim on appeal as either unpreserved for appellate review or without merit. Therefore, I treat the Appellate Division's ruling as a decision on the merits, s*ee Jimenez*, 458 F.3d at 139; *Fama*, 235 F.3d at 810, and I apply the level of deference that AEDPA requires.

A jury instruction that relieves the prosecution of its burden of proving guilt beyond a reasonable doubt creates a structural error, making it necessary to reverse the conviction. *See Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993). In addition, where the

16

court's instruction creates a mandatory presumption, *i.e.*, that the jury must infer the presumed fact if the State proves certain predicate facts, and where that presumption works to "relieve the State of the burden of persuasion on an element of an offense," *Francis v. Franklin*, 471 U.S. 307, 314 (1985), then the Due Process Clause has been violated.

During its preliminary instructions to the jury, the court read the indictment, including the descriptions of the elements of the charged offenses. Tr. 1248-57. The court also instructed the jury that "the indictment against the defendant is only an accusation, nothing more," and that Player was innocent until proven guilty. Tr. 1262-63. The court further instructed the jury that it was the prosecutor's burden to prove the defendant guilty as to each offense beyond a reasonable doubt. Tr. 1263.

These instructions did not relieve the prosecution of its burden to prove Player's guilt beyond a reasonable doubt, nor did they create an impermissible presumption. Moreover, the court's reasonable doubt instructions were adequate to protect against such a danger. There is no reason to believe that the description of the offenses lightened the prosecution's burden. The Appellate Division did not apply clearly established federal law in an unreasonable way by concluding that the instruction did not violate Player's constitutional rights.

Accordingly, Player's claim that the trial court's preliminary instructions violated his due process rights is not a basis for habeas corpus relief.

5. *The Prosecutorial Misconduct Claim*

Player claims that the cumulative effect of the prosecutor's improper remarks during trial and summation deprived him of a fair trial. Because the Appellate Division rejected this claim as unpreserved for appellate review or without merit, just as it rejected the two

previous claims I have discussed, I may consider the merits of this claim, subject to the deferential standard of review set out in AEDPA.

When a federal habeas court evaluates a prosecutorial misconduct claim of the sort that Player advances, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); s*ee also Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (relief is available only where the court "find[s] that the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights"). "It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992).

In order to determine whether a defendant's due process rights have been violated, a habeas court should examine whether or not a prosecutor's comments actually prejudiced the defendant, *i.e.*, whether the comments "had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994), *cert. denied*, 516 U.S. 1152 (1996). The Second Circuit has adopted a three-part test for determining whether a prosecutor's improper argument deprived the defendant of a fair trial, considering "(1) the severity of any misconduct, (2) the measures taken to cure the misstatements, and (3) their likely effect on the outcome." *United States v. Forlorma*, 94 F.3d 91, 95 (2d Cir. 1996); *see also Bentley*, 41 F.3d at 824. The Second Circuit has also determined that it is appropriate to consider a prosecutor's comments in summation in relation to arguments advanced during the defense summation that impugn the integrity of the government's case. *See United States v. La Sorsa*,

18

480 F.2d 522, 526 (2d Cir. 1973).

Player argues that the prosecutor (1) elicited trial testimony regarding Player's gang affiliation in contravention of the court's ruling that such evidence should not be introduced (Tr. 1405-06)[2]; (2) referred to the defendants as animals (Tr. 5320); (3) became an unsworn witness by suggesting to the jury that Meyer's hair was singed even though an expert witness testified that there was no obvious sign of burning (Tr. 5371-72); (4) encouraged the nurses on the jury to employ their professional expertise during deliberations by suggesting to them that they "could understand" how vials of blood are mixed up during testing, but that a letter in evidence that Argentina wrote when he was in jail is "about as unique as you can get" (Tr. 5347).

Though the prosecutor's comments were at times unnecessarily inflammatory, the challenged comments, whether considered individually or in the aggregate, were not severe enough to create a risk of substantial or injurious effect upon the verdict. Moreover, if this were such an injurious effect, it would have been ameliorated by the trial court's instructions to the jury to "rationally and objectively attempt to ascertain the truth," (Tr. 5443), that the summations were not evidence (Tr. 5444), that they were not to communicate professional expertise to other jurors (Tr. 5445), that the defendants enjoyed the presumption of innocence (Tr. 5451-54), and that the verdict should not be influenced by bias, prejudice, or sympathy (Tr. 5453). The prosecutor's reference to the profession of nursing when comparing how vials of blood might be mixed up with how a handwritten letter was unique may have been clumsy, but it was not an improper invitation for the nurses to use their professional expertise. Any one of the jurors could

---

[2] This argument is baseless. The court did not instruct counsel to exclude reference to the defendants' gang affiliation throughout the trial. To the contrary, the court determined that at various points "the question will be asked, an objection will be made and I will make a ruling." Tr. 1405.

have understood that comparison to an equal degree.

Finally, the prosecutor's comments were certainly not so egregious as to support a finding that the Appellate Division's rejection of this claim was an unreasonable application of clearly established federal law. Accordingly, I reject Player's prosecutorial misconduct claim.

CONCLUSION

For the foregoing reasons, the petition is denied. As Player has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: March 6, 2007
      Brooklyn, New York