UNITED STATES DISTRICT COURT　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
NAJEE PLAYER,

     Petitioner,      MEMORANDUM
                AND ORDER
  -against-        06-CV-2764 (JG)

DALE A. ARTUS, Superintendent, Clinton
Correctional Facility,

     Respondent.
----------------------------------------------------------x
A P P E A R A N C E S :

  GREEN & WILLSTATTER
    200 Mamaroneck Avenue
    Suite 605
    White Plains, NY 10601
  By: Richard D. Willstatter
    Attorneys for Petitioner

  THOMAS J. SPOTA
    Suffolk County District Attorney
    Criminal Courts Building
    200 Center Drive
    Riverhead, NY 11901
  By: Guy Arcidiacono
    Attorney for Respondent

JOHN GLEESON, United States District Judge:

  Najee Player, currently incarcerated in Clinton Correctional Facility in New York, seeks to supplement his petition for a writ of habeas corpus with additional claims. For the reasons stated below, I grant Player leave to amend his petition, but find his new claims without merit and deny the petition as amended.

## BACKGROUND

  On August 6, 2001, Player was convicted of participating in a brutal gang murder. The offense conduct proven at trial and the procedural history of Player's case

are set forth more fully in my Memorandum and Order of March 6, 2007, familiarity with which is assumed. The Appellate Division affirmed Player's conviction on April 25, 2005. *People v. Player* (*Player I*), 793 N.Y.S.2d 536, 536 (2d Dep't 2005). Player sought rehearing and leave to appeal to the New York Court of Appeals, but both applications were denied. He did not collaterally attack his conviction in state court.

On May 30, 2006, Player petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, he claimed that he was deprived a fair trial because (1) the trial court failed to instruct the jury that defendants may not be convicted solely on the uncorroborated testimony of accomplice witnesses in violation of N.Y. Crim. Proc. Law § 60.22; (2) the trial court should have instructed the jury that unlawful imprisonment in the first degree is a lesser included offense of kidnapping in the second degree; (3) the state constructively amended the indictment by changing its theory of the case at trial; (4) the trial court's preliminary instructions to the jury violated N.Y. Crim. Proc. Law § 270.40 by reciting each count of the indictment and allowing the jury to find that Player was guilty before he was able to present his evidence; and (5) the prosecutor made improper remarks at trial and in summation.

On March 6, 2007 I issued a Memorandum and Order denying Player's petition. Judgment was entered on March 8, 2007, and Player appealed my denial of his petition on March 28, 2007. On September 17, 2007, Player requested permission to file a second petition for the writ of habeas corpus but did not indicate what claims he sought to present. In an Order dated October 10, 2007, I transferred the petition to the Court of Appeals for the Second Circuit pursuant to *Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996).

2

On October 17, 2007, believing Player's appeal of my March 6, 2007 Memorandum and Order still to be pending, I vacated my October 10, 2007 Order as improvidently entered. *See Whab v. United States*, 408 F.3d 116, 118 (2d Cir. 2005) ("[S]o long as appellate proceedings following the district court's dismissal of the initial petition remain pending when a subsequent petition is filed, the subsequent petition does not come within AEDPA's gatekeeping provisions for 'second or successive' petitions."). In my October 17, 2007 Order, I set a briefing schedule for Player to submit supplemental claims and to argue that he should be granted leave to amend his initial petition to include them.

On November 1, 2007 I received notification for the first time that the Court of Appeals had already decided Player's appeal on September 6, 2007 -- before he requested leave to file a second petition -- and entered a mandate on September 28, 2007. On November 2, 2007, I appointed counsel and directed Player to present the substance of his supplemental claims and to address whether they constituted a "second or successive" petition within the meaning of AEDPA's gatekeeping provisions. *See* 28 U.S.C. § 2244(b) (mandating screening of second or successive petitions).

Player's supplemental petition claims that his trial counsel was ineffective for (1) failing to request an instruction on the corroboration requirement of N.Y. Crim. Proc. Law § 60.22; (2) failing to request an instruction on the lesser included offense of unlawful imprisonment; (3) failing to move to dismiss the charges on the grounds that the government constructively amended the indictment; (4) failing to challenge the trial court's instruction outlining the elements of each count of the indictment; and (5) failing to timely challenge prosecutorial misconduct during trial and at summation. He also

argues that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective in those respects. In short, Player's only claims in his supplemental petition are that his trial counsel provided ineffective assistance for failing to challenge the specific errors that Player complained of in his original petition, and that his appellate counsel provided ineffective assistance for failing to so argue.

## DISCUSSION

A.  *AEDPA's Gatekeeping Provisions*

28 U.S.C. § 2244(b)(3)(A) prohibits district courts from addressing new claims in a "second or successive" § 2254 petition unless the court of appeals issues an order authorizing consideration of the new claims. In *Whab*, the Second Circuit interpreted § 2255's analogous "gatekeeping" provision not to apply to subsequent petitions filed before the completion of the appeal of a district court's dismissal of the first petition. 408 F.3d at 118 ("[S]o long as appellate proceedings following the district court's dismissal of the initial petition remain pending when a subsequent petition is filed, the subsequent petition does not come within AEDPA's gatekeeping provisions for 'second or successive' petitions."). As § 2255's gatekeeping provision refers to § 2244, which governs second or successive § 2254 petitions, *Whab*'s reasoning has been applied to § 2254 petitions as well as § 2255 petitions. *See, e.g.*, *Breeden v. Ercole*, No. 06-CV-3860, 2007 WL 3541184, *1 (Nov. 14, 2007) (treating *Whab* holding as governing filing of second or successive § 2254 petition).

Player's September 17, 2007 request for permission to file additional claims was made before the time for seeking Supreme Court review of his initial petition had expired, and thus was made while appellate proceedings were still pending within the

4

meaning of *Whab*. *See Whab*, 408 F.3d at 120 (noting that adjudication is not final until the time for seeking Supreme Court review expires). In light of his status at the time as a *pro se* petitioner, I treat Player's additional claims as relating back to his September 17, 2007 request to submit additional claims for the purposes of AEDPA's gatekeeping provisions. *See id.* (treating moment of filing an "application for gatekeeping approval" before the court of appeals as the "proper reference point for determining whether a petition is 'second or successive'").[1] Therefore, I find his additional claims not to constitute a "second or successive" petition within the meaning of 28 U.S.C. § 2244(b).

B.   *Leave to Plead Supplemental Claims*

That Player's supplemental claims are not barred by AEDPA's gatekeeping provisions does not mean that I am obliged to grant him leave to present them at this point. Rule 15(a) of the Federal Rules of Civil Procedure, which provides that a court "should freely give leave [to amend a pleading] when justice so requires," governs requests to amend habeas petitions. *See Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001) ("[T]he standard for granting or denying a motion to amend [a § 2254 petition] is thus governed by Federal Rule of Civil Procedure 15(a)."). However, I am not required to grant leave to amend where doing so would encourage dilatory or abusive tactics. *See id.* ("[A]lthough Rule 15 requires that leave to amend be 'freely given,' district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive."); *see also Whab*, 408 F.3d at 119 n.2 ("Our disposition should not be misconstrued as providing a free pass for

---

[1]   Additionally, because the claims arise out of literally the same conduct as the claims in his initial petition, they relate back to the filing of his initial petition for limitations purposes, and are thus not untimely. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005) (noting that amendments to § 2254 petitions made after the statute of limitations runs relate back to the original petitions if the amended claims arise out of the same conduct, transaction or occurrence under Federal Rule of Civil Procedure 15(c)(2)).

5

prisoners to file numerous petitions before an initially filed petition is finally adjudicated on the merits. Traditional doctrines, such as abuse of the writ, continue to apply.").

I find it appropriate to grant Player leave to amend his petition and include his supplemental claim. The respondent argues that the fact that Player requested permission to file additional claims a week after the court of appeals denied his motion for a certificate of appealability suggests that he abused the writ by seeking delay. I read the situation differently, given Player's status at the time as a *pro se* litigant and the fact that even I was not informed that the Second Circuit had rendered a decision until almost two months later. Given that Player's claims are so easily resolved on the merits, *see* Section E, *infra*, I see no reason not to grant Player leave to amend his petition.[2]

C. *Review of State Court Adjudications on the Merits Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions. 28 U.S.C. § 2254(d). A federal habeas court may now overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

---

[2] The question whether to deny leave to amend a petition as abusive is entrusted to a district court's discretion. In *McClesky v. Zant*, the Supreme Court declared that the doctrine of abuse of the writ, when pled by the government, would bar petitioners from filing additional claims unless they could demonstrate either cause and prejudice or a fundamental miscarriage of justice, just as in cases of procedural default. 499 U.S. 467, 494-95 (1991). This decision does not appear to leave room for the district court to exercise its discretion, but it does not apply here. *McClesky* dealt with petitions filed after the complete adjudication of an initial petition. *Id.* at 470, 473-74. The Second Circuit has made clear that where adjudication is incomplete, even if only because appellate proceedings have not fully terminated, "the decision to grant a motion to amend is committed to the sound discretion of the district court." *Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002).

The Supreme Court has interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" to mean "the holdings, as opposed to the dicta," of its decisions at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 412-13.

A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (internal quotation marks omitted) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

On appeal, Player argued that his trial counsel was ineffective for all of the reasons he argues here, a claim that the Appellate Division rejected along with several

others as "either unpreserved for appellate review or without merit." *Player I*, 793 N.Y.S.2d at 537. This operates as a denial on the merits for the purposes of AEDPA's limited scope of review. *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006) (citing *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2d Cir. 2000)).

D.  *Exhaustion of Remedies*

Player has not exhausted his claim of ineffective assistance of appellate counsel. Absent several circumstances not present here, a district court may not grant a writ of habeas corpus pursuant to § 2254 unless "it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the State." § 2254(b)(2). For the reasons stated below, I deny Player's unexhausted claim of ineffective assistance of appellate counsel on the merits notwithstanding his failure to exhaust available remedies with respect to that claim.

E.  *Ineffective Assistance of Counsel*

1.  *The Legal Standard for Ineffective Assistance of Counsel*

The Supreme Court has established the following standard for claims that defense counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a

>     breakdown in the adversary process that renders the result
>     unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In assessing whether counsel's performance was deficient, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted); *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . ."). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct," *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), instead emphasizing that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms,'" *id.* (quoting *Strickland*, 466 U.S. at 688), which requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 689).

To establish the required "reasonable probability" that counsel's errors changed the outcome of the case, the petitioner must show not just "some conceivable effect," *Strickland*, 466 U.S. at 693, but rather "a probability sufficient to undermine

9

confidence in the outcome," *id.* at 694. This determination, unlike the determination whether counsel's performance was deficient, may be made with the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 371-73 (1993).

2. *Player's Claims*

i. *The Corroboration Requirement*

Player argues that his trial counsel was ineffective in failing to object to the court's failure to instruct the jury with respect to two witnesses[3] that under N.Y. Crim. Proc. Law § 60.22, a defendant cannot be convicted upon the uncorroborated testimony of an accomplice witness. For substantially the same reasons as those stated in my March 6, 2007 Memorandum and Order, I conclude that Player was not entitled to such an instruction. *Player v. Artus* (*Player II*), No. 06-CV-2764, 2007 WL 708793, *5 (E.D.N.Y. Mar. 6, 2007). Accordingly, Player's attorney was not ineffective in failing to request it.

ii. *The Lesser Included Offense Instruction*

Player argues that his trial counsel was ineffective in failing to request an instruction for unlawful imprisonment as a lesser included offense of kidnapping. However, his trial counsel did make such a request, Tr. 5527-28, and the Appellate Division affirmed the trial court's denial of this request. *Player I*, 793 N.Y.S.2d at 537. Therefore, Player's claim of ineffectiveness is meritless.

iii. *The Constructive Amendment Claim*

Player argues that his trial counsel was ineffective in failing to claim that the government constructively amended the indictment. However, his trial counsel

---

[3] Player's counsel did request such an instruction with respect to a third witness. This request was denied.

10

joined in the objections lodged by the other attorneys claiming that the government constructively amended the indictment. Tr. 4932. In any event, for substantially the same reasons as those stated in my March 6, 2007 Memorandum and Order, I conclude that the government did not constructively amend the indictment. *Player II*, 2007 WL 708793 at *7-*8.

        iv.    *Charging the Jury on the Elements of the Offenses*

Player argues that his counsel was ineffective in failing to object to the trial court's initial charge to the jury, which included an outline of the elements of the charged crimes. For substantially the same reasons as those stated in my March 6, 2007 Memorandum and Order, I conclude that the court's instructions to the jury were proper. *Player II*, 2007 WL 708793 at *8-*9. Therefore, Player's attorney was not ineffective for failing to object to them.

        v.    *Prosecutorial Misconduct*

Player argues that his trial counsel was ineffective in failing to make timely objections to improper remarks by the prosecutor during trial and in the government's summation.[4] For substantially the same reasons as those stated in my March 6, 2007 Memorandum and Order, I conclude that the prosecutor's remarks, "whether considered individually or in the aggregate, were not severe enough to create a risk of substantial or injurious effect upon the verdict." *Player II*, 2007 WL 708793 at *10. Therefore, any claim based on ineffective assistance regarding this charge must fail.

        vi.    *Ineffective Assistance of Appellate Counsel*

---

[4] One of Player's counsel's objections to the prosecutor's conduct was untimely because it was made at the close of the prosecutor's summation, Tr. 5423, and some of the prosecutor's challenged statements passed without objection from Player's counsel.

11

Player himself does not allege ineffective assistance of appellate counsel in his petition, but his attorney indicates that Player is alleging that his appellate counsel was ineffective for failing to raise the above claims of ineffectiveness of trial counsel. *See* Pet'r's Reply Mem. 5 ("One of the striking features of Player's new claims is that they are identical to those he raised before but differ *only* in the legal theory he advances, that is, that it was ineffective for his lawyers to fail to preserve and argue those issues on appeal."). For the reasons discussed above, Player's trial counsel did not provide ineffective assistance. Therefore, Player's appellate counsel did not perform deficiently in failing to argue that Player's trial counsel provided ineffective assistance.[5]

## CONCLUSION

For the reasons stated above, the petition is deemed amended to include Player's supplemental claims. The petition as amended is denied. As Player has not made a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 6, 2008
      Brooklyn, New York

---

[5] As noted above, Player presented the claim of ineffective assistance of trial counsel to the Appellate Division through a supplemental *pro se* submission.